## NICHOL v. STEWART.

1. **PARTIES:** *In suits for settlement of partnerships:　Assignee of one partner.*

   In a suit in equity by one partner against the other for an account and settlement of the partnership business, the individual creditor of the plaintiff, and assignee of his interest in the results of the partnership, has the right to be joined with him as plaintiff, both having an interest in the result of the accounting.

2. **PARTNERS:** *Right of mortgagee of one partner.*

   A mortgage by one partner of a specific number of bales of cotton out of the partnership crop, for the payment of his individual debt, gives to the mortgagee who has notice of the partnership, no right to the specific property, but only a right to the ultimate interest of the mortgagor in the partnership effects, after all its debts are paid, to the value of the cotton at the time of the mortgage.

3. **SAME:** *Their right to make partnership debts under special agreements.*

   Although it may be agreed between partners in cropping, that accounts against the firm or the crops shall be made only by a particular partner, yet, if he assent to the other partner's furnishing supplies or tools, expressly, or impliedly by refusing to furnish them himself when necessary, the other partner may furnish them, and will be reimbursed out of the crops the value of the supplies, and a reasonable compensation for the use of the tools; but he can not demand pay for the tools themselves, nor throw them upon the other's hands after the crop is made.

4. **DAMAGES:** *Chancery jurisdiction in.*

   Damages from malfeasance, misfeasance or nonfeasance are not of themselves proper subjects of chancery jurisdiction, when they constitute the whole or principal ground of the relief sought; but when an incident in a case properly cognizable in equity, may be estimated for the purpose of closing the whole litigation in one suit.

5. **PARTNERS:** *Rights of partners in partnership effects.*

   Each partner in cropping has a lien upon the proceeds of the crop for the payment of all partnership debts, and the debt of other partners to him, growing out of partnership transactions; but as against assignees of a partner, this lien does not extend to any general balance due him from the assignor, upon all matters, nor to a particular debt not connected with the partnership.

APPEAL from *Jefferson* Circuit Court in Chancery.
Hon. X. J. PINDALL, Circuit Judge.

### REPORTER'S STATEMENT.

On the seventeenth day of March, 1875, C. A. Nichol
and Israel Stewart made the following contract:

" Memoranda of agreement entered into between C. A.
Nichol, of the first part, and Israel Stewart, of the second
part. Witnesseth: First, the said C. A. Nichol agrees to
put in a parcel of land, say 500 acres, more or less, for and
in consideration of the sum of four thousand dollars, situ-
ated in Jefferson county, state of Arkansas, and known as
the Nichol river-place, and to advance all necessary mules,
implements and supplies for the cultivating of said land;
the four thousand dollars rent to be paid in the proportion
of one-half ($2,000) by said Nichol, and one-half ($2,000)
by said Stewart; and it is agreed and understood by the
parties, that so much of the $2,000 rent to be paid by the
said Stewart as his half of the said rent, as fifteen hundred
dollars, shall be deducted from the two thousand dollars
(his half of the rent-money) and be allowed him in and for
consideration of his managing and directing the labor and
laborers on said place. The mules, implements, gearing,
etc., to be returned at the end of the year to said Nichol,
or accounted for by the parties to him; each bearing his
proportion of the loss and damage, one-half to be borne by
said Nichol, and one-half to be paid by said Stewart to said
Nichol; mules valued and agreed to at $125 each. And
said Stewart, in consideration of the $1,500 deducted from
his half of the rent, and allowed for his services, agrees to
give his time, attention and best energies to the manage-
ment and cultivation of the crops, he having the sole and

entire management of the laborers on the place.   And it is further agreed, that no accounts shall be made for or against the place or crops except by the said C. A. Nichol.

" Second.   The cotton and corn shall be divided equally between the said Nichol and Stewart; the said Nichol receiving one-half thereof, and the said Stewart the remaining other half of one-half, after all indebtedness to said Nichol for rent, supplies, etc., is fully paid.   And it is further agreed, that the losses which may accrue on account of the laborers, as all other losses which may occur according to their contract, shall be borne equally by said Nichol and Stewart.

" This the seventeenth day of March, 1875.

" C. A. Nichol,<br>" J. Stewart."

On the thirteenth of April, 1876, Stewart filed in the Jefferson circuit court his complaint in equity against Nichol, setting up and exhibiting the foregoing contract and averring that Nichol furnished the land and teams as therein agreed, but failed to furnish some of the tools and implements necessary to cultivate and save the crop, and he had to furnish them out of his own means, to the value of not less than two hundred and thirty dollars; and that they were used in cultivating and saving the crop, with the knowledge and consent of Nichol, and, before the institution of this suit, had been turned over to him.   That Nichol also failed to furnish some of the supplies necessary for making and saving the crop, and the plaintiff in consequence, had to furnish them to the value of $1,700, with the knowledge and consent of Nichol; and they were used solely for their joint interest.   That he also advanced to and for Nichol during the year for his individual use, pro-

visions and money to the amount of one hundred and seven dollars.

When the last of the crop of cotton, amounting to 156 bales, was ready for shipment, they agreed that the defendant should ship them to his merchant in New Orleans on his own account, and when sold, he should pay over to the plaintiff, or to whom he should direct, his interest in the proceeds. He believes the defendant received $7,000 for cotton; and asks that he discover the amount. That Nichol also received some six hundred dollars for cotton seed sold by him, one-half of which belonged to the plaintiff.

He then alleges that the defendant refuses to account and settle up the partnership business, and prays for a discovery from him of the amounts received by him, and for an account of the partnership business, and of the advancements made by him for the defendant, both as to the partnership and for his individual use and benefit, and for general relief.

Nichol answered, admitting the contract, except that by the original contract the plaintiff and defendant were, each, to receive the one-half of the one-half, *i. e.*, the one-fourth of the whole crop instead of as stated in the complaint; and the laborers were to receive the other half of the whole.

He denies the alleged failure to furnish supplies, or that the plaintiff was compelled to furnish the tools, or that any tools furnished by him were used with the defendant's approbation, or were turned over to him. Plaintiff bought some at his own option, which were useless; and if they were left on the premises they were voluntarily left there by the plaintiff, without the defendant's knowledge or consent, and were subject to the plaintiff's order. Defendant had a large supply of tools—furnished all required, and

could and would have furnished others if called for.   He furnished all necessary supplies and denied that the plaintiff furnished any; but if he did furnish any, it was in violation of the written contract, without first demanding them of the defendant.

He admits that their portion of the cotton, when it was ready for market, was 156 bales, and he shipped it to his merchant and sold it on his own account, as stated in the complaint.   The net sales amounted to $5,193.60.

He denies selling any cotton seed, and denies that plaintiff performed his engagement to attend to the management of the farm; and asserts to the contrary, great neglect, and abandonment of the premises by the plaintiff for most of the year, by reason of which great loss accrued to the partnership by the idleness of the laborers and their neglect of the crop in his absence.   Early in the fall the plaintiff moved to Pine Bluff and engaged in other business. Seventy-five bales of cotton were wasted and left in the fields by his neglect to have it picked; and besides this, the defendant had to pay out $1,305 for the picking of what was gathered, and in addition to all the foregoing, the defendant paid out for the use of the partnership during the year the sum of $4,559.37.   He claims two thousand dollars damages for the plaintiff's neglect of duty, and asserts in addition, that he furnished the plaintiff goods and supplies for his individual use to the value of $1,408.

Only 268 bales of cotton were gathered on the place; of which only 134 bales belonged to the partnership, and of this the plaintiff had received fifty-six bales, and was more than paid his full share, without reference to the damage sustained by his neglect of duty.   Accounts of sales of the cotton, and an account of the losses sustained by the plaintiff's neglect were filed with the answer.

On the thirteenth of November, 1877, Trulock Brothers

filed a petition to be made parties plaintiffs in the suit, setting forth that after the crop was shipped and before any settlement between Stewart and Nichol, Stewart being indebted to their firm two thousand dollars, for money advanced to him to aid in saving and preparing the cotton for market, had, with Nichol's consent, executed to them a mortgage on thirty bales of the cotton being produced on the place, and afterwards on the twenty-sixth of March, 1876, had drawn a sight draft in their favor, on Nichol, for any balance which might be found due to him on final settlement between them; and that Nichol had accepted the draft, and they were entitled to said balance in Nichol's hands.

The draft was exhibited as follows:

"PINE BLUFF, ARK., March 21, 1876.

"C. A. NICHOL, Esq.:

"Pay Trulock Brothers any and all balance due me by you on final settlement between you and myself, for our crop to this date. J. STEWART."

Nichol filed a response to this petition, admitting the draft and his acceptance of it, but insisting that the petitioners could sue only by an independent suit, and not as parties in this action.

The petition was granted, and the petitioners filed their complaint adopting the statements and charges contained in Stewart's complaint, and further alleging, in substance, the making of the mortgage by Stewart on his interest in the crop, as stated in the petition, and that when the crop was ready for shipment, it was agreed by and between Stewart, Nichol and themselves, that in consideration that they would permit Nichol to ship the cotton to his merchant in New Orleans on his own account, notwithstanding the mortgage of Stewart's interest to them, he (Nichol)

would immediately give them a sight draft on his merchant for the full amount of Stewart's indebtedness to them. That in pursuance of the agreement Nichol had shipped the cotton and afterwards refused to give them the draft, and holds the proceeds of the cotton. They then further allege the making of the draft by Stewart and acceptance by Nichol as stated in their petition. They pray that Nichol, be decreed to pay to them the amount of Stewart's interest in his hands, at least to the amount due them at the date of the draft.

Nichol answered, denying that Trulock Brothers furnished Stewart means to save the partnership crop, or that the mortgage was given to secure money advanced for that purpose. If they did furnish him money for such purpose, it was their own wrong and in violation of the contract between Stewart and himself, which Trulock Brothers well knew.

He informed them at the time of accepting the order, that it was subject to settlement with Stewart, and but little would be coming to him. He makes his answer to the original complaint his answer to this, and denies that he ever promised Trulock Brothers a sight draft on his merchants.

Without any hearing of the cause, or any decree upon the rights of the parties, the court referred it to a Master to take proof and state an account between the parties according to their equities, and report his action at the next term of the court.

The Master filed his report, with a large amount of evidence, at the next term, and both parties filed exceptions to it.

The report is voluminous. The material points in it, the conclusion from the evidence, and the decree following, are sufficiently stated in the opinion.

Both parties appealed.

*U. M. Rose,* for appellants:

Argued upon the evidence, there being no question of law.

*T. B. Martin,* for appellee.

EAKIN, J. The articles of agreement for a planting partnership, executed in March, 1875, by complainant, Stewart, and Nichol, are carelessly drawn. They contain enough, however, to show, in themselves, the intention of the parties. It is clear that Nichol agreed to put in lands, at an estimated rent of $4,000.; and to advance, to the firm, the mules, implements, and supplies for the cultivation of the crop. The meaning of this is, that he would furnish, free of cost, the use of sufficient mules and agricultural implements, retaining his property in them; and would *advance* to the firm such supplies as would be consumed in using, to be repaid to him individually out of the partnership crop. It was specially provided that no accounts should be created against the crop, save by Nichol himself.

Stewart, on his part, was to have the sole and entire management of the laborers on the place, and bound himself to give his time, attention and best energies, to the business. In consideration of which he was to be allowed by Nichol the sum of $1,500, as a part of his share of the rent; the effect of which was to leave him individually indebted to Nichol in the sum of $500 for his half of the rent, the other $2,000 being retained by Nichol as landlord of the firm.

It was not contemplated, but, indeed, expressly forbidden, that the firm should contract any debts save to Nichol himself. It was contemplated that a half of the crop of cotton and corn would not belong to the partners. In con-

nection with a common and well known habit of business amongst planters, the inference is that it would go to the laborers. As for the rest, it was provided that Nichol would receive one-half (which would be one-fourth of the whole) and Stewart "the remaining other half of one-half, after all indebtedness to said Nichol for rent, supplies, etc., is fully paid." A reasonable construction of the concluding clause in this provision would be to apply it to the whole of the arrangement for division, so that the charges would come out of the partnership crop before division, and not out of Stewart's share alone; or what would be the same, that Stewart should be liable out of his share for half of these charges, as well as half the losses. Thus construed, the contract was fair, and easily intelligible without the aid of extraneous evidence. To obtain an account and settlement of the partnership thus created, Stewart fi'ed this bill against Nichol.

1. PARTIES: In suits for settlement of partnership business. Assignee of one partner.

Trulock Brothers, were, properly, on their motion, admitted as co-complainants. They showed themselves to be, at least, assignees of all Stewart's interest in the results of the partnership operations, and his individual creditors. Under that state of things they would have, with Stewart, an interest in the results of the accounting, whilst Stewart, himself, would have a sufficient interest to maintain his original position as complainant. All that Trulock Brothers would get would go to diminish his indebtedness to them. It is not like a case where third parties come in and seek the privilege of prosecuting a suit, begun by one, who in the beginning had no cause of action, nor interest in the subject-matter.

2. PARTNERS: Right of mortgagee of one partner, in partnership effects.

It is convenient to determine here, more definitely, what, exactly, were the rights of Trulock Brothers. In the first place they were the individual creditors of Stewart. The firm owed them nothing. They gave credit to Stewart

alone. They had been advancing him money during the year of the partnership, and to secure payment took from him on the twenty-seventh of December a written conveyance of thirty bales of cotton on the partnership place for the expressed consideration of $1,000. This gave them no right to the specific property. The articles of partnership had been duly recorded. Besides, they actually knew all about it. They could only take in equity, for Stewart's debt, an assignment of his ultimate interest in the partnership effects, after all its debts had been paid, and the co-partner's proper share taken out, together with all sums due to him from the partnership effects, arising out of partnership transactions. Partners, as against each other, have each an equitable lien upon all the partnership assets, to have them applied, first, to the payment of partnership debts, and next, to the adjustment of claims against each other arising from the partnership transactions. It is only through this equity of the partners against each other and this trust of partnership effects in each other's hands, that the preference of firm creditors over individual creditors, to be paid out of partnership effects, is worked out. Otherwise than by this sort of subrogation, they have no lien at all upon partnership property. The whole effect of this conveyance of Stewart, was to give Trulock Brothers, not a right to take the cotton from Nichol's hands or to interfere with its shipment, but to claim, on a settlement of partnership affairs, that so much of the ultimate interest of Stewart in the partnership effects as would not exceed the value of thirty bales of such cotton as was on the place when the assignment was made, should be paid to them. The cotton had not been divided.

They say that some time in March, 1876, Nichol agreed with them to pay all Stewart's debt then due them, if they would release the mortgage and all claims against Stewart

and allow Nichol to ship all the cotton of the firm, which they did. Nichol denies this, and the testimony is in direct conflict. He says he only agreed with them to pay over, on Stewart's debt, so much of the proceeds as would properly come to Stewart's share. We are relieved from weighing this testimony for two reasons. If such a verbal contract was made, as they contend, and it were valid, as a novation, under the statute of frauds, it would leave them with only a personal debt against Nichol, for which they might sue at law, but could not get position in this suit to charge partnership effects as such. Besides, whatever may have been the contract originally, they soon differed as to its terms; and, to settle the matter, they took Nichol's acceptance of an order, in their favor from Stewart, to pay over to them "all balance" due him from Nichol on *final* settlement between them on the crop. The proof shows, further, that Trulock Brothers still hold the original debt against Stewart; so that it must be presumed that all idea of a novation was abandoned by all parties; and Trulock Brothers must stand upon their assignment of Stewart's interest, and the terms of the order accepted by Nichol. The amount of Stewart's debt to them is a matter with which Nichol had absolutely nothing to do. With regard to the partnership matters, they may claim Stewart's share, be it much or little. All further settlements are between them and Stewart.

3. ———: Their right to make partnership debts, under special agreements.

Returning to a construction of the articles. Under them, Stewart was prohibited from purchasing tools or creating a charge against the partnership for supplies. If he did so with Nichol's assent, express or implied, he would be properly entitled however, to be reimbursed out of the crops, a fair valuation for the supplies; and a reasonable compensation for the *use* of such tools of his own as he may have furnished or purchased. He would have no right to

demand pay for the tools themselves, or to throw them on Nichol's hands after the crop was made. The *onus* of showing Nichol's assent would be upon him, to remove the presumption that all advances made by him, in the face of the provision against creating debts, were meant to be gratuitous. Advances of supplies, or the use of his own tools, made from necessity, resulting from Nichol's refusal on application, would stand on the ground of assent.

There was no decree as to the rights of the parties before the order of reference. The Master was simply substituted for the Chancellor, and intrusted to determine in the first instance, all questions of fact, and apply the equity.

This court has had occasion formerly to comment on the mistaken view of the nature and functions of a Master, involved in this practice. It is plain, in this instance, that if the principles to govern the Master, had been first settled by the court, and embodied in directions, it would have saved expense and delay.

One of the exceptions to the report of the Master was, that it made no account of the damages, claimed by Nichol, to have resulted from the failure of Stewart to devote his undivided time, energies and attention to the business, whereby the laborers neglected their work, and much cotton was lost by delay in picking. It is also claimed for Nichol that he lost considerably on advances he had made to laborers, and which their shares of the crop did not repay, whereas, had they been properly supervised and directed they would have made and picked out enough to have enabled Nichol to collect in full. *4. Damages Chancery jurisdiction in.*

It is true, that, in an equity case involving matters appropriate to chancery jurisdiction, damages from malfeasances, misfeasances or non-feasances regarding the subject-matter, may be estimated incidentally, for the purpose

of closing all litigation in one suit. They are not of them-
selves, however, proper subjects of chancery jurisdiction
when they constitute the whole, or principal ground, of
the relief sought. They should in all cases be affirma-
tively shown with some tolerable degree of certainty, or
they should not be taken into the adjustment of matters
arising from contract, or affecting property. Jurisdiction
to award compensation for damages has been assumed by
courts of equity with great caution, and manifest reluc-
tance. In this case there was some evidence that Stewart
had been absent, at times, from the crop, and that his at-
tention had been at times attracted to other business; but
the proof with regard thereto—the length of time he was
absent, and its consequences upon the business—are too
vague to allow of any definite calculation. The damages
shown are somewhat of a speculative character, and more
consequential than direct. They were well left out of the
calculation, especially as Nichol is not shown to have
made, at the time, any remonstrance, or complaint of the
conduct of Stewart.

5. PART-
NERS:

Rights of,
in partner-
ship effects

With regard to the individual debts of the partners, to
each other, the rule to be applied in favor of the assignees
of Stewart's interest in the crop is, that Nichol had a lien
upon all the proceeds of the crop to the extent of seeing
all the partnership debts paid, and for the satisfaction of
all his claims against Stewart arising out of the partner-
ship transaction. But, as against assignees, this lien
would not extend to secure any *general balance* due from
one partner to another, upon all matters, nor a particular
debt due from an assignor to the copartner, arising out of
matters having no connection with the partnership, and so
*vice versa*. Nichol's acceptance of the order of Stewart
bound him, by the tenor of the instrument, to pay to Tru-
lock Brothers whatever might be found due to Stewart out

of the crop.   This must be construed to give them prefer--
ence over any claim of Nichol against Stewart, for a pri-
vate debt, not growing out of their partnership business,.
or contracted in course of it with an understanding, ex-
press or implied, that it should be adjusted as a part of the·
partnership business.   See *Nichol v. Mansford, 4 John. Ch.,.
522.*

Upon a bill for the settlement of a partnership, without.
allegation to show an equity for a general accounting be--
tween the partners as to ,all matters, no mere individual·
debts between the partners, not connected with nor grow-
ing out of the partnership transactions, should be taken·
into account; especially against assignees of the interest in·
the partnership, of one or more of them.   It is not meant
that, between the partners themselves, a bill might not be·
framed to show an equity for a general accounting and.
clean settlement.   But this bill is not of that character,.
and hence, no mere individual debts, outside of the part--
nership matters, should be taken into the account in de-·
termining the amount for which Nichol should account:
to Trulock Brothers.

The Master reported, very truly, that the evidence was·
so vague and unsatisfactory that he could only approxi-
mate results.   It is a very common occurrence, and, in such
·cases, courts of chancery must do the best they can to·
close further question or litigation.   Those who desire·
close and accurate settlements, should keep strict, precise
and accurate accounts.

He found, as matter of fact, that Nichol had verbally as-
sumed, and was thereby liable to pay the whole indebted-
ness of Stewart to Trulock Brothers, amounting to $1,938.55
with interest from March 1, 1876, and that Stewart in ad-
dition to $1,600 advanced the firm for supplies and cotton
picking, had purchased, and put upon the place, tools to

40—36

the value of $229.88. Supplies advanced by Nichol were valued at $2,038.76. The proof of any circumstances sufficient to give Stewart a right to advance any supplies at all and charge the partnership, is very weak indeed. If, indeed, he did so, as the Master found, and the court approved, it relieved Nichol of just so much of a burden he had assumed, and upon a settlement, it would be equitable to allow it in advance of any special proofs on Nichol's part that he suffered loss from not being allowed to do it himself.

It was error to allow anything for the tools. There was no proof of the value of their use, and from all that appears, they still belong to Stewart, unless Nichol has converted them. In either case he had a remedy at law, within the period of limitation. The Master properly declined to take any further account of the individual indebtedness of the partners to each other.

In stating the account, the Master charged Nichol with the proceeds of the crop, less his own advances and supplies—a balance of $3,154.84. Against this balance he charges him in favor of Trulock Brothers, with the sum of $1,600 advanced by Stewart to the firm, which he recommends that Nichol be made to pay, leaving still in his hands $1,554.84, of which Stewart would be entitled to half, or $777.67. Out of this he allows him to retain for his rent $500, leaving $277.67; to which he adds as due Stewart, one half the bill for implements, $114.94, and also a balance assumed on Trulock Brothers' debt to make up its full amount, $338.58. According to this statement he reports that there would be coming to Stewart individually, after the satisfaction of Trulock Brothers, the sum of $54.06, but recommends, in view of the evidence, that Stewart have no decree for the balance.

The error in this report is in holding Nichol responsible

to Trulock Brothers for Stewart's whole debt, and in allowing anything for the farming tools. Otherwise, it is as nearly correct as any investigation can, probably, make it.

The Chancellor supposed the Master was mistaken in holding Nichol bound by his verbal promise, instead of his written acceptance, but reached the same result by finding that Nichol was actually indebted to Stewart on the settlement of the partnership matters, in the sum of Trulock Brothers' debt, and was so when he accepted the draft, and that the sum of $1,938.55 had been due from Nichol to the said firm since the first day of August, 1876, bearing interest at six per cent. from that date, amounting at the time of the decree to $365.50.

The decree for said amounts was entered in favor of Trulock Brothers against Nichols, with all costs.

It is impossible upon the proof to find Nichol indebted to Stewart in that amount, without including Nichol's private indebtedness.

It is not a case in which the amount finally found in Nichol's hands should bear interest. He is not liable to Trulock Brothers on their paper, but only for his fidelity in discharging his trust in winding up the partnership concern, and turning over to them Stewart's part. The circumstances might well have justified a reasonable delay in making a settlement, until many matters, by no means plain, could be cleared up. The suit, moreover, was precipitated and actually brought before the cause of action accrued. The cotton had not been sold. Strictly, complainants ought not to have costs, yet as there must have been a suit some time, and no motion was made, upon this ground, to dismiss the suit, the costs below ought to be divided.

The best statement practical, had better be made now and here, and the controversy ended.

Nichol v. Stewart.

The decree is erroneous, but may be modified, and stand of its date:

*Charge Nichol to partnership, Dr :*
August 1, 1876, proceeds of cotton...............$5,193.60

*Cr.*

By his own advances.....................................  2,038.76
By amount of Stewart's advances, to be paid
    Stewart ...................................................  1,600.00

    Total..................................................$3,638.76

Balance partnership funds...........................$1,554.84
One-half due Stewart..................................   777.42

*Charge Nichol to Stewart, Dr :*
To one-half interest in balance, as above.........$   777.42
Amount retained for him, as above................  1,600.00

    Total.................................. ...............$2,377.42
Deduct for Stewart's rent............................   500.00

Balance due Stewart...................................$1,877.42

which Nichol ought to have been decreed to pay Trulock Brothers, without interest before decree; to be, when paid with interest at six per cent. from date of decree, a credit upon Stewart's debt to them—saving their rights against Stewart as to any balance.

Let the decree be, here, modified as thus indicated ; and, also, to divide the costs below, equally, between Nichol on one side and complainant on the other. All the costs of this court to be paid by appellees. As thus modified let the decree be affirmed and stand as of the date of its rendition.