THE VALLEY NATIONAL BANK v. JACKAWAY *et al.*

**Promissory Notes:** COLLATERAL SECURITY: WAIVER OF LIEN BY PURCHASE ON EXECUTION.   The payee of an accommodation note made by defendants deposited it with plaintiff, before maturity, as collateral security for his note to plaintiff, under a written agreement that the collateral note might, if the principal note was not paid at maturity, be sold at public or private sale, and the proceeds applied to the expenses of sale and the payment of the principal note.   The principal note was put in judgment, and the judgment provided for the sale of the collateral note on special execution.   By mistake a general execution was issued instead of a special one, and the note was sold thereon after maturity, and bid in by plaintiff.   In this action to recover judgment on the note,

*held* that the plaintiff took the note as a pledge, before maturity, free from the equities which existed between the payee and the makers, and that its purchase of it, by mistake, under a general instead of a special execution, was not an attempt to acquire a title to it inconsistent with the lien which it before had, and thus a waiver of the lien, but only an attempt to enforce the first lien under the contract by which it was created, and that plaintiff was entitled to recover regardless of the equities between the makers and the payee.

*Appeal from Polk District Court.*—HON. MARCUS KAVANAGH, JR., Judge.

FILED, JUNE 5, 1890.

ACTION on a promissory note. Judgment for defendants, and the plaintiff appeals.

*J. K. Macomber* and *Mitchell & Dudley*, for appellant.

*Bousquet & Earle*, for appellees.

GRANGER, J.—The Johnson Directory Company made to the plaintiff's cashier, on the twenty-third of June, 1887, its note for three hundred and seventy-five dollars, and as collateral thereto deposited with the payee the note in suit for five hundred dollars, under a written agreement that the collateral note might, if the principal note was not paid at maturity, be sold at public or private sale, at the option of the holder, and the proceeds applied to the expenses of sale, and the payment of the principal note. The principal note was after maturity put in judgment, and the judgment provided for the sale of the collateral note on special execution. By mistake, a general execution issued in lieu of a special one, and the note was sold thereon, and bid in by the plaintiff; and it brings this suit to recover of the makers.

The defense urged is that they made the note to the Johnson Directory Company as accommodation

VOL. 80—33

paper, and received no consideration whatever therefor, and that plaintiff's title thereto is derived from the execution sale only, and that thereby it took only the rights of the Johnson Directory Company therein. It is true that the note was received by the plaintiff as security before maturity, but that the sale on execution was after maturity. The facts as to how the note was received by plaintiff, the placing of the principal note in judgment, and the sale of the collateral note on general execution, instead of a special one, by mistake, are pleaded in a reply to defendants' answer. The particular point urged by defendants is that the election by plaintiff to sell the note on general execution operated to defeat its rights as a *bona-fide* holder before maturity, and that, after the sale on execution, it could no more enforce it against the makers than the Johnson Directory Company could, as to whom, of course, the plea of accommodation makers and no consideration would be good. The facts in the case are not disputed, and the questions argued are of a legal import. It is plainly stated in argument by appellees that they do not question the plaintiff's title or ownership of the note. Their only contention is as to the conditions of such ownership; that is, does it take the note charged with the equities between the makers and the payees, or does it hold it freed therefrom, and protected by the lien it derived from accepting it before maturity as collateral to its note against the Johnson Directory Company? Appellees' contention is that it is the former,—that is, that it takes the note charged with the equities; and for the reason that by surrendering the note to be sold on general execution, instead of appropriating it under the terms of the pledge, or by a sale on special execution, as directed in the judgment, it waived its lien, and holds it only as it would if it had purchased it of the Johnson Directory Company after maturity. It is said by appellee that "a person cannot claim property under two inconsistent rights at the same time. He may select either, but he cannot avail

himself of both." The statement, as a general proposition, has support on authority. As giving the statement direct application to the case in hand, appellees say, "A pledgee waives his lien by attaching or levying on the pledge," and cite several authorities, among which is Jones, Pledges, section 599. But the section goes no further than to state the rule as a general one; and there is much reason to believe that the statement of the rule is designed for cases in which a party intentionally adopts other methods or means for security than those prescribed or available for the enforcement of his lien. In this case the plaintiff, holding the note as a pledge, had a judgment and an order of the court for the sale of the pledge on special execution. It ordered a special execution to issue, and, believing the sheriff held an execution as ordered, placed the note in his hands for sale thereunder, and with such a belief purchased the note at the sale. It is afterwards discovered that, by a mistake of the clerk, the sheriff had proceeded under a general execution. The effect of the deviation from the course intended is far more shadowy than substantial.

There is merit in the rule that, if a lienholder disregards his rights thereunder, and intentionally seeks to create a lien on the same property by other means, and to hold the property thereunder, he shall be held as having waived his prior lien, for the two are inconsistent; and authorities are numerous in support of such a view, and those cited by appellees are of that character. But there is no merit in a rule that a mere mistake as to the character of the execution under which a sale is made, as that it was general instead of special, will divest the pledgee of the benefits of his security as such. No authority or reason is given us to sustain such a holding. We quote the following from appellees' brief, as it evidences the character of the authorities cited in support of their position: "The moment the pledgee voluntarily parts with his possession, or claims the right to detain the goods upon a

different ground, the lien is lost." Concede the rule, and it does not aid appellees in this case; for plaintiff has never voluntarily parted with its possession, or claimed to detain the note upon other grounds than by virtue of the pledge and judgment. The placing of the note in the hands of the sheriff for sale was not a voluntary parting with the possession, as contemplated by any authority cited, but a step intended to effectuate its lien; and the possession of the sheriff would seem to be but the possession or custody of the law for that purpose. If not, the sheriff was surely acting for the plaintiff in making the sale, and hence its agent. This statement is made only on the theory that the plaintiff by the sale designed to appropriate the pledge, as he lawfully might do by its terms, and not to obtain a different lien by a general levy of execution; and in this case there can be no question as to such intent. Nor does the record justify a conclusion that plaintiff ever claimed the note except as a pledge. The mere mistake as to the character of the execution would not constitute a voluntary parting with possession, or a claim to detain the note on different grounds, or by virtue of a different right; and hence the facts do not bring the case within the rule as announced by appellees. Such a voluntary act or claim has no foundation in a mere mistake. The authorities cited by appellees to support that rule show in every case, or warrant the belief, that the party intended the act charged as constituting the waiver. In *Jones v. Scott*, 10 Kan. 33, property otherwise exempt from execution was pledged as security for a debt, and the pledgee had the right, without judgment on his claim, to sell the property pledged, and extinguish the claim; but he put it in judgment, took execution, and sold the property thereunder. The pledgeor in that case brought replevin for the books pledged, on the ground that the pledgee had forfeited his rights to the books as a pledge because of his proceeding at law to obtain the judgment and sell the property on execution; the property, but for the

pledge, being exempt from execution. The execution in that case is spoken of as an ordinary execution upon a judgment at law, and we assume that it corresponds to our general execution. The holding is that the pledgee had a right to reduce his claim to judgment, and especially treats of the sale on execution instead of by other methods, and holds that, inasmuch as the judgment did not invalidate the lien, there could be no valid objection to the issuance of an execution, and the sale of the property thereon. In that case there was no mistake, but an intentional sale on an ordinary execution at law. In this case the right to obtain the judgment is not questioned. It is practically conceded; and we think the mere fact that the plaintiff by mistake placed the note in the hands of the sheriff for sale on a general execution, instead of a special one, does not divest the lien by virtue of the pledge. The district court held otherwise, and hence it erred. There should have been a judgment for plaintiff for the amount of the note. It is not necessary to consider other questions. The judgment of the district court is

REVERSED.