E. F. CLAPP, Appellee, v. E. D. ADAMS, ANNIE J. ADAMS, M. E. JOHNSTON, J. M. ADAMS, D. A. MUNGER, and HENRY NEGUS, Defendants, and A. N. HEMINGWAY, Appellant.

**Partnership:** INDIVIDUAL DEBTS: LIABILITY OF FIRM PROPERTY: LIENS.
1  Defendant purchased a one-half interest in certain personal property for the purpose of forming a partnership, and gave his notes for the purchase price signed also by a surety. *Held,* that the notes in no sense represented a partnership debt for which the partnership property was liable.

**Same:** WAIVER OF LIEN. The taking of collateral security for the debt
2  of one partner to the other, incurred for an interest in property put into the partnership, is a waiver of any lien the selling partner may have had on the property.

**Mortgage of partnership property:** INDIVIDUAL DEBTS: LIABILITY OF
3  FIRM PROPERTY. A mortgage given by one partner on his interest in partnership property and to secure his individual indebtedness, is subject to all partnership debts and liens.
Evans, C. J., and Weaver, J., dissenting.

*Appeal from Washington District Court.*—HON. K. E. WILCOCKSON, Judge.

FRIDAY, MAY 14, 1909.

REHEARING DENIED TUESDAY, SEPTEMBER 28, 1909.

*Henry Negus,* for appellant.

*Milton Remley,* for appellee.

DEEMER, J.—Plaintiff is claiming that the two notes sued upon, signed by E. D. and Annie J. Adams and E. D. Adams and M. E. Johnston, represent debts of the firm of Clapp & Adams, and that he should have a lien to the amount thereof upon the partnership assets prior and superior to the lien created by a chattel mortgage, made by E. D. Adams, a member of the firm, to A. N. Hemingway upon the said Adams' interest in the personal property of the firm. The facts as found by the referee which are not challenged and must be accepted as correct upon this appeal, are as follows: Plaintiff was the owner of a farm in Washington County upon which there was live stock and farm machinery, and E. D. Adams was desirous of occupying said farm, and of forming a partnership for the operation thereof. As a result he and plaintiff entered into a written contract of partnership,

wherein defendant Adams agreed to buy an one-half interest in the stock and machinery then on the farm at the agreed price of $2,754.00 for said one-half interest, and to pay for the same in cash, or to give a bankable note drawing six percent interest. Pursuant thereto two notes were made, one for $1,500, signed by E. D. Adams and M. E. Johnston, and the other for $1,254, signed by E. D. Adams and Annie J. Adams. The articles of co-partnership also provided:

It is agreed and understood that all of the running expenses of farming said premises, exclusive of permanent fixtures and labor as above set forth, shall be borne equally by each party of this agreement, and such running expense to include the purchase of stock and farm machinery and the like expenditures. It is agreed and understood that each party shall own an undivided one-half interest in all stock, crops or farm machinery now upon said premises or that may hereafter be produced or purchased, provided, however, that the two sorrel mares, Victoria and Heula, owned by first party, shall not be included herein. All profits made by this copartnership shall be divided share and share alike. Either of the parties hereto shall have the right to sell any stock or grain on said premises, but shall be held accountable to said copartnership for any sum received from such sale. This agreement shall be in force and effect for five years from October 1, 1900, provided, however, that the same may be canceled by mutual agreement, and provided further, that the death of either party shall terminate and end this agreement.

It also appears, although this evidence was introduced by defendants, that defendant E. D. Adams gave a chattel mortgage to plaintiff on March 18, 1901, covering seventy-two head of cattle, ninety-five head of hogs, and thirty-three head of horses, to secure the note above referred to. This mortgage does not seem to have been recorded. Plaintiff for some reason makes no claim under this mortgage, but defendant pleads it as evidence of plaintiff's waiver

of any partnership lien he may have had. On February 24, 1905, E. D. Adams gave a chattel mortgage to defendant Hemingway to secure a note of even date therewith of his interest in all the property upon the farm, covered by a long description not necessary to be set out, the crops for the year 1905, and all increase of live stock. This mortgage provided that it shall be "subject to any rights which the said E. F. Clapp [plaintiff] may have." This mortgage was duly recorded in Washington County. In February of the year 1905 plaintiff pressed Adams for additional security for the notes, and M. E. Johnston, one of the signers of the notes, placed with him two promissory notes amounting to $1,000 as collateral for the $1,500 note. Plaintiff and Adams had annual settlements of their partnership affairs down to, and including, the year 1905, and as a result indorsements were made upon the two notes given by Adams, which appear thereon, but which the referee found were erroneous in some particulars not necessary to be noticed at this time. The amount found due on the $1,500 note was $1,720.31, and on the other one $561.45.

At the time of the termination of the partnership, and for the purpose of winding it up, a public sale of all the property was held, and as Hemingway, J. M. Adams, and M. E. Johnston claimed to be creditors of E. D. Adams, and had liens upon the property it was agreed, by and between said plaintiff E. F. Clapp and the defendants named, that two trustees should be appointed to receive from the hands of the clerk of said sale all moneys, notes, and bills received as a result of said sale, the same to be held by said trustees to await the determination as to who had the prior claim to the said property, and thereupon D. A. Munger and Henry Negus were selected as such trustees, and said sale was conducted accordingly, and there were turned over to the said trustees from the clerk of said sale, notes to the amount of $785.25 and cash in

the amount of $231.49, or a total of $1,016.74. It was
also found that, by reason of receipts by plaintiff from
the proceeds of the sale, he should be charged with the
sum of $2,358.50 as partnership property. It was found
that the total assets for division was $3,387.12 of which
Adams was entitled to $1,681.76, and the total amount
found to be due on the two Adams' notes was $2,231.70.
The referee also found: "The testimony does not show
an agreement upon the part of plaintiff, E. F. Clapp,
to allow the defendant E. D. Adams to mortgage his
interest in said partnership to outside parties, as claimed
in the pleadings, but shows that plaintiff did not ob-
ject so long as such mortgages did not interfere with his
rights. On the 24th day of February, 1905, the defend-
ant E. D. Adams executed a chattel. mortgage to A. N.
Hemingway, one of the defendants herein, as set out in
the pleadings, covering his undivided one-half interest in
all of the property of said copartnership, subject to any
rights that the said E. F. Clapp might have herein, and
on the 24th day of February, 1905, the defendant, E. D.
Adams, executed another chattel mortgage to M. E. John-
ston and J. M. Adams upon the same property as set out
in the pleadings, subject to all the rights of the said E.
F. Clapp and A. N. Hemingway." As a conclusion of law
the referee found that plaintiff, Clapp, had a partnership
lien, to the extent of the amount due upon the notes, upon
the amount found due Adams from the proceeds of the
property; that plaintiff did not waive his lien by taking the
mortgage, the two notes with sureties thereon, or the col-
lateral security, and that the chattel mortgages of Heming-
way and the other defendants were junior and inferior to
plaintiff's so-called partner's lien. These conclusions were
approved by the district court, and judgment was ordered
accordingly. Hemingway alone appeals.

It will be observed that Adams alone purchased an one-
half interest in property owned by Clapp for the pur-

pose of forming the partnership, and that he gave his notes
for the purchase price, each secured by the
addition of another name. This was in no
sense a partnership debt, for the partner-
ship had not then been formed. It was the
debt of Adams alone, and the notes were taken according
to the partnership agreement in payment of the amount
agreed upon. They did not represent an indebtedness of
the firm, and never became a firm debt. They were never
treated as such by the parties at any time, and there is
no reason why they should be so treated now. See *Evans
v. Hawley,* 35 Iowa, 83; *Bright v. Carter,* 117 Wis. 631
(94 N. W. 645); *Bates v. Lane,* 62 Mich. 132 (28 N. W.
753); *Uhler v. Semple,* 20 N. J. Eq. 288; *Bull v. Coe,*
77 Cal. 54 (18 Pac. 808, 11 Am. St. Rep. 235); *Peterson
v. Roach,* 32 Ohio St. 374 (30 Am. Rep. 607); *Currier
v. Webster,* 45 N. II. 226.

*1. PARTNERSHIP: individual debts: liability of firm property: liens.*

Moreover, plaintiff did not see fit to rely upon any
so-called partnership lien for the reason that he took the
individual notes of Adams signed by acceptable sureties,
afterwards took a mortgage upon which he
does not rely, but which is admissible for
the purpose of showing waiver, and also de-
manded and accepted collateral security for the $1,500
from one of the sureties, which he still holds. This mani-
festly constituted a waiver of his lien upon the partner-
ship property, if he ever had any such lien. *Johnston &
Son v. Robuck,* 104 Iowa, 523; *Smith v. Smith,* 87 Iowa,
93; *Valley Nat. Bank v. Jackaway,* 80 Iowa, 512.

*2. SAME: waiver of lien.*

As he does not rely upon the chattel mortgage, he,
of course, can have no relief bottomed there-
on. Hemingway's rights under his mortgage
upon Adams' interest in the property is sub-
ject to the payment of all legitimate part-
nership liens, and to the payment of all
partnership debts. He obtained nothing through his

*3. MORTGAGE OF PARTNERSHIP PROPERTY: individual debts: liability of firm property.*

mortgage save Adams' interest after all partnership debts and liens were paid and satisfied; but, to whatever was left after that was done, Hemingway was entitled under his mortgage. *Thompson v. Spittle,* 102 Mass. 207; *Sloan v. Wilson,* 117 Ala. 583 (23 South. 145); *Nicol v. Stewart,* 36 Ark. 612; *Clements v. Jessup,* 36 N. J. Eq. 569; *Deeter v. Sellers,* 102 Ind. 458 (1 N. E. 854).

True, Hemingway's mortgage was subject to any rights that Clapp may have had in the chattels mortgaged. But this did not mean a general claim or personal debt owing him by Adams and the sureties on the notes. He had no right in or to the property mortgaged because Adams was individually owing him upon notes given as the purchase price of the half interest sold to Adams. If he had a lien upon the property, the case would be quite different; but, as we have seen, he never had any such lien, and if he had, he waived it long before the sale of the property. The case is not one where a partner advances all the capital for the firm, depending upon receiving it back upon final settlement, as were those relied upon by appellee's counsel, but one where the plaintiff sold a half interest in the property to his proposed partner, taking in payment the proposed partner's notes. For some reason Clapp did not care to rely upon his mortgage lien, or upon the security given him, at the time of winding up the affairs of the copartnership. He did not treat his over advancement, if such it may be called, as a partnership debt, but took the individual promise of the proposed member to pay for the amount sold him, no matter what the result of the partnership venture. Appellee's counsel fails to see this distinction, which to our minds is the controlling feature of the case.

The decree of the court below is erroneous, and it must be reversed, and the cause remanded for one in harmony with this opinion.—*Reversed* and *remanded.*

EVANS, C. J.—I dissent from the conclusion of the majority on this record.

WEAVER, J.—I concur in the dissent of EVANS, C. J.