CHARLES HART, Appellee, v. ROBERT H. SMILEY, et al., Appellants.

No. 39894.

FEBRUARY 11, 1930.

REHEARING DENIED SEPTEMBER 23, 1930.

*Keenan, Barnes & Clovis,* for appellants.

*Stephens & Thornell,* for appellee.

EVANS, J.—The plaintiff was the owner of a farm near Coin, Iowa. He did not live upon it. The farm had been operated for more than 20 years under two successive copartnership agreements. The first of these copartnerships comprised the plaintiff and one Whitmore as copartners; the second thereof comprised the plaintiff and one Newman. The copartnership with Smiley, here under consideration, became the third in the succession. It began its operations on March 15, 1921, on which date Smiley went into occupancy of the farm. The plan of the copartnership was substantially the same as those that preceded it. This was that the farm should be operated by the copartnership; that the method of operation should be the raising of grains and hay and pasture for the feeding of stock for the market. It was arranged wholly by oral conversations. It was to operate under the name of Smiley & Hart. Smiley was to furnish all the labor of operation, and was to occupy the farm, and was to be the active manager of the operations. Hart was to furnish the use of the farm, as against the labor of operation. All the stock was to be acquired and owned by the partnership, and each partner was to contribute equally to such acquisition, and was to share equally in all the earnings of the enterprise. A bank account was to be kept in the name of Smiley & Hart at the First National Bank, and all financial transactions were to go through said account by appropriate deposits and checkings.

In order to acquire the necessary stock for the partnership, it was arranged that Smiley should attend public sales and buy the requisite stock. This was done by him. He began purchasing the stock on March 15, 1921, and within a few days, made

the requisite purchases, amounting to approximately $13,000. More than $12,000 of the purchase price of the stock thus acquired was advanced by Hart. Smiley paid of his own funds about $700. The excess paid by Hart over and above the amount paid by Smiley was more than $12,000. These advancements had been made by Hart without any particular understanding or arrangement with reference thereto. He knew that Smiley had no adequate means to meet his share of the payments, and it seems to have been understood that he would advance whatever was necessary to properly stock the place. He had done the same thing in the preceding partnership with Newman, and perhaps with Whitmore.

Hart was an elderly man, and suffered considerable disability because of so-called palsy, which had afflicted him for many years. Because of this affliction, he could not "write or figure." All the business of the partnership was done by Smiley. In any distribution of proceeds of stock sold, Smiley remitted or delivered to Hart a check for his share of the proceeds. No dispute has ever arisen between the partners as to the state of the account or as to the amount actually due Hart. After the completion of the original expenditure of capital, the amount of such expenditure and the amount contributed by each partner thereto were computed. The amount of excess contributed by Hart over and above the amount contributed by Smiley was found to be more than $12,000, as above indicated. Sometime thereafter, Smiley drew and signed a note for $6,000, and either gave or sent it to Hart. Some years later, he drew and signed a new note, and retired the first one. Some years later, and in April, 1928, he drew and signed another renewal note, for approximately $6,700, which latter note is still in existence, in the hands of Hart. This note transaction is the basis of the defense. The note as first drawn represented the deficiency of Smiley's contribution to the capital. The last note is supposed to include a computation of interest on the preceding note. Neither of the two preceding notes has been preserved, and only the last one has been introduced in evidence. In the organization of this copartnership, no time limit was fixed for its termination. It was simply agreed that it could be terminated on the first of March of any year by either party, by notice on or before the preceding August. It did in fact continue in ex-

istence up to March 1, 1929. In May, 1928, Smiley gave to the intervener bank a mortgage for $5,800 on his purported half interest in the "partnership property." A part of the consideration of this mortgage was owned by intervener McDonald.

The interveners contend, and Smiley contends in their behalf, that they are entitled to enforce their mortgage as against the proceeds of the partnership property, and to establish a superiority of lien over the plaintiff, Hart, as to the amount of deficiency advanced by him on behalf of Smiley. The contention of Hart is that he is entitled to take, in the first instance, out of the net proceeds of the partnership, after the payment of debts, sufficient to repay his entire advancement.

In brief, the ultimate question involved herein is, Which has the prior lien upon the proceeds of the partnership property, as between Hart and the mortgagees?

I. Some question was made in the court below by the defendants, challenging the existence of any partnership at all. We do not understand that point to be pressed on this appeal, and we shall devote no discussion to it.

The argument of the appellant may be reduced to two principal propositions:

(1) That the moneys advanced by Hart were not advanced to the partnership, but to Smiley only; that, therefore, the partnership never became debtor to Hart.

(2) That if, in the first instance, Hart should be deemed to have advanced the money to the capital of the partnership, yet he converted his claim against the partnership into a claim against Smiley alone; and that this transmutation was accomplished by taking from Smiley the note above described.

By his advancements Hart did pay for all the property purchased by Smiley for the partnership. Clearly, this was a partnership transaction. Being such, the partnership did become liable to him for such advancements, and that liability included liability of his copartner, Smiley, for the same advancement, to the extent of one half thereof. The copartnership being liable to Hart in the first instance for such advancements, it is still liable therefor, unless it affirmatively appears that Hart had segregated the transaction and had converted it from a partnership transaction into an individual transaction with Smiley alone. This involves the consideration of appellant's

second proposition. The legal formula put forth by the appellants is that only partnership debts have equitable claim upon the partnership assets; that, if the plaintiff has any claim against the partnership, it is a claim for all of his advancements, amounting approximately to $12,000; that, if the partnership owes him anything, it owes him $12,000, and not $6,000; that, if it does not owe him $12,000, it does not owe him $6,000; that his claim is reducible to $6,000 only on the theory that Smiley owes it, and not the partnership. It is argued that the taking of the note from Smiley was a waiver of his claim against the partnership; that it was the equivalent of payment, so far as the partnership was concerned; that it was an extension of personal credit by Hart to Smiley, and was wholly independent of the partnership transaction.

The legal formula that the advancement of $12,000 in a partnership transaction rendered the partnership a debtor to a like amount, may be fully accepted. Even so, the partnership would have a claim or offset against the plaintiff for one half of it. The net amount, therefore, due to the plaintiff from the partnership would be the $6,000 which the partnership could collect from the other copartner, Smiley. Such is the practical result of the formula. The taking of the note was an item of evidence that tended to prove the alleged segregation of the transaction. It did not *ipso facto* establish such segregation. The legal effect of the taking of the note was dependent upon the mutual intent with which it was given and received. This is the turning point in the case. There is no serious dispute over the propositions of law presented by the respective parties. The decisive question is one of fact, as pertaining to the actual intent of the parties. The decisive feature of the findings of the trial judge was on this question of fact. Such finding included the following:

"The court further finds that, sometime following March 15, 1921, the said Charles Hart had advanced for said partnership a large sum of money in excess of the amount which had been contributed thereto by said Smiley, and that, upon the suggestion of said Smiley, and to evidence the amount of which the plaintiff, Hart, would be entitled to in excess of his one-half interest in the partnership property, the promissory note of Smiley to Hart was executed and delivered to Hart; that

said note so given is not in evidence, but was for a sum slightly in excess of $6,000; that said note was without interest; that thereafter, payments were made upon said note out of the share of said Smiley from the proceeds of the sale of firm .property; that said note was renewed on April 27, 1928, in the sum of $6,791.85, said note being Exhibit No. 5, in evidence in this suit; that same was due in one year, and with no specific rate of interest shown, if paid at maturity. The court further finds that, when the original note was given by Smiley to Hart, during the year 1921, it was at that time the agreement and intention of said parties that the giving of said note was not a separate individual transaction between said parties, but was only given as a memoranda to show the amount which the plaintiff, Hart, would be entitled to in excess of his one-half interest in the partnership property, and to be paid to him out of the other half interest in said partnership property; and the court specially finds that, at said time, and at all subsequent times, and whenever said note was renewed, and at the time said note for $6,791.85, Exhibit No. 5, was executed, that the parties did not change their original agreement and intention, and that at no time did the parties intend to segregate the transactions whereby notes or renewals thereof were given from Smiley to Hart, from the partnership affairs or business. The court further finds that it was at all times the agreement and understanding of the parties that Smiley's share of the partnership property should be held good for the amount evidenced by said memorandum note, and that said agreement, understanding, and intention was at no time changed by said parties."

If the foregoing finding of facts commands our approval, it is decisive of the result. Not only so, but it presents no inconsistency with the legal propositions urged by the appellants. It will be noted that the lower court found that the note in question was not intended as a payment or settlement or a segregation of the transaction, but was intended merely as a memorandum, to preserve the computation.

As already indicated, the plaintiff was under serious disability. He was 85 years old at the time of the trial. It does not appear that any books were kept, except the cash account at the bank. There was no actual record book of the partnership upon which the plaintiff's advancements could be preserved,

as a matter of record. The plaintiff did not ask for a note. Smiley himself wrote the note and signed it, and either sent or gave it to Hart. It correctly represented the amount which would be due the partnership from Smiley, and correctly represented the net amount which would be due Hart from the partnership. By the lay mind the legal formula properly contended for by appellants might not be comprehended at all, though the practical result of it would be manifest. The giving of this note could be deemed a short cut to a manifestly proper result, although the legal formula by which the result was reached, was not appreciated at all. Though every litigant must be presumed to know the law, yet, where intent, as a question of fact, is controlling or material, it is always proper to take into consideration the point of view of the ordinary man. Hart knew that Smiley was wholly unable to pay his share of the capital. The giving of the note was not preceded by any request for it. After the giving of it, no request for payment was ever made. Nor was there any request for its payment or renewal when it became due. At some indefinite time after its due date, Smiley gave another note, in lieu of the first one. There was no request for that. The evidence tends to show that these notes were drawn to mature in each instance in one year after date. It is inferred from the circumstances that the last note included interest accrued upon the preceding note. This circumstance is pressed by the appellants as a circumstance of segregation. But the act of drawing this note was wholly that of Smiley. He never in fact paid interest. No interest had ever been requested of him. Furthermore, if interest had been agreed on, it would not be inconsistent with the position of the plaintiff. Partners may properly agree that interest should be computed upon the excess advancements of any partner. The note in this record purported to be "with interest at the rate of —— per cent." The blank was wholly unfilled, and no question was raised about it by the plaintiff. Smiley himself testified that Hart never asked him for payment of the notes. In view of the fact that both parties knew from the beginning that Smiley had no means wherewith to pay his share of the capital, except as it might be earned in the operation of the copartnership, the mutual conduct and attitude of both parties are very persuasive of a mutual intention that Hart should carry the

burden until it could be paid either out of the earnings of the copartnership or out of its proceeds on dissolution.

It is not readily inferable, in the absence of some apparent reason therefor, that Hart would voluntarily waive his equitable lien upon the partnership property, and that he would accept in lieu thereof the simple promissory note of his insolvent partner. Nor is it readily inferable that Smiley would expect him to do so, or that either party regarded the note transaction as having such purpose or effect. . The burden of proving segregation is upon the defendants. Such burden is not to be carried by resort to mere inferences, which could be drawn as favorably for the plaintiff as for the defendant.

In the consideration of the question of actual intent of the parties, and whether there was a mutual intent to work a segregation of the transaction, it is proper to note that *all* the partners in the partnership were parties to this particular transaction. If this partnership had comprised three or more partners, and if this transaction between two of the partners had been had without participation therein by the others, a somewhat different coloring would be put upon the mutual intent of the partners, as distinguished from that of the two parties to the transaction. The fact that not all the partners were parties in interest would be a circumstance entitled to consideration in favor of the theory of segregation. If, in such a case, all the three or more partners were interested in the transaction, and were participants therein, this would be a circumstance tending to negative an affirmative segregation. Some of the authorities from other jurisdictions relied on by the appellant are cases where a partnership comprised three or more persons, and where the transaction was had between two of them without participation, interest, or knowledge on the part of the other copartners. In view of the fact, therefore, that this partnership comprised but two partners, and that they were dealing together as partners, and that the transaction herein under consideration was consistent with their partnership relation, it should not be lightly found that they mutually intended to segregate this item of business from their partnership affairs. No motive or reason is suggested, nor is any reason apparent why Hart should wish, or be willing, to segregate this transaction from the partnership business, nor yet why Smiley should ex-

pect or desire it, in the absence of some ulterior purpose on his part.

Our reading of the record brings us to the same conclusion upon the facts as that reached by the trial court. In view of such finding of facts, we have little occasion to discuss the legal propositions contended for by appellants. The authorities relied on by appellants are all predicated upon the contrary finding of facts. Some of these authorities are cases where the plaintiff brought an action on his note, and where the defense was predicated upon the alleged partnership character of the transaction. It is argued by appellant that the plaintiff could have transferred the note in question herein, or could have sued on it at any time. If the plaintiff had sued on the note, or if he had transferred the same, a very different question would be presented. Such an act might be conclusive on him as a showing of intent on his part to segregate the transaction. The plaintiff did not sue on the note; he never attempted its collection; his first attempt at collection of his due is to ask that the amount of his advancement be paid to him out of the proceeds of the partnership property; he did not transfer any note; he never treated the note as an independent transaction. Nor did Smiley ever treat it as such until he gave the mortgage to his codefendants, in May, 1928. These consistent circumstances have been persistently maintained for a period of eight years, during the continuance of the partnership. They tend undeniably to support the contention of the plaintiff.

Of our own cases, the one perhaps most relied on by the appellants is *Clapp v. Adams,* 143 Iowa 697. The notes involved in that case comprised the purchase price of property purchased by the maker from the payee. The transaction preceded the partnership. It was evidenced by a written contract between the parties in their individual capacity. In such contract the price was agreed upon. It was further agreed that the purchaser should pay the price in cash, or by bankable notes. Bankable notes were presented, duly signed by the maker and by his sureties. The seller insisted upon security from the sureties. Thereupon, collateral was put up by the sureties. It was held that the transaction was an individual one, and held also that the insistence of the seller upon security was a waiver of any

partnership lien, if he had one. The case at bar is not ruled thereby.

It is our conclusion that the decree of the district court was a correct one, and it is, accordingly,—*Affirmed.*

MORLING, C. J., and FAVILLE, KINDIG, and GRIMM, JJ., concur.