## Nissley v. Heller

*Maurice Metzger*, for plaintiff; *Oscar Wickersham*, for defendant.

HARGEST, P. J., June 22, 1931.—The question in this case is whether the defendant has a right to claim her exemption out of property levied upon by the sheriff. The defendant borrowed from the plaintiff two sums of money for which she pledged a diamond necklace and a diamond ring as security. The defendant claimed that the loans were in large part paid, but a verdict for the full amount of the claim, namely, $677.52, in favor of the plaintiff refuted her contention. After judgment was entered on the verdict, the plaintiff caused execution to be issued. The plaintiff then permitted the sheriff to levy upon the diamond ring and diamond necklace and take the same into his possession to be sold under the execution. The defendant thereupon claimed her exemption and the plaintiff presented a petition, upon which a rule was granted, to show cause why the appraisement valuing her diamond ring and diamond necklace at $290 should not be set aside, to which rule the defendant made answer.

### Discussion

The question before us is whether a pledgee who has secured a judgment for the loan, because the pledgor insisted the loan was paid, in pursuing his right to execution on that judgment and surrendering the property pledged to be sold on said execution, relinquishes his lien to the property which he has secured by the pledge.

In Hawley *v.* Hampton, 160 Pa. 18, it is held: "A pledge of personal property implies a waiver of the benefits of the exemption law." This seems to be the general rule: Bowman *v.* Smiley, 31 Pa. 225; Emerson *v.* Knapp, 114 N. Y. Supp. 798; 11 R. C. L. 544; 25 C. J. 114.

Having then secured the pledged property against which the defendant could not assert her right to exemption, did the plaintiff lose his rights in it by the subsequent proceedings? Upon this question the authorities are not in accord and there is no definite decision in Pennsylvania. On the one hand, it is held in a number of jurisdictions that where the pledgee disregards his rights under

the contract and intentionally seeks to create a lien on the same property by other means, such as attachment or execution, he will be held to have waived the lien of his pledge: Jarvis v. Rogers, 15 Mass. 389; Valley Bank v. Jackaway, 80 Iowa 512; Jones v. Scott, 10 Kan. 33; Latta v. Tutton, 68 Am. St. Rep. 30, 122 Cal. 279; Jacobs v. Latour, 5 Bing. 130, 15 E. C. L. 388; 50 L. R. A. 19. On the other hand, it is held: "Taking a property out of the possession of the pledgee under a levy of an execution or legal process against the pledgor does not divest the pledgee's lien:" 49 C. J. 934.

In Reichenbach v. McKean, 95 Pa. 432, it is held:

"The taking of property out of the possession of the pawnee by a sheriff's sale does not divest his property and is in no sense a relinquishment of his lien, and a bona fide purchaser from the sheriff's vendee takes it subject to said lien."

The question, however, which confronts us is whether the pledgee loses his lien when he causes the execution to be issued on a suit for the same debt. There is no case in point in Pennsylvania. The nearest approach to a controlling case in this state is Eagle, Inc., v. Kunkle, 278 Pa. 190. In that case there was a replevin to recover certain machinery in the possession of the defendant in property owned by the defendant. The defendant had issued a landlord's warrant to seize the property which was also on pledge in his possession. The opinion of the Supreme Court uses language to support both sides of the instant controversy. It is said (page 193):

"Appellee issued a landlord's warrant to seize the property on pledge in his possession. He did not, under the facts, waive his rights as a pledgee, and should not be held solely to the lien of the warrant. He may claim the property pledged against a purchaser for value from the bailor."

The opinion also says:

"Where a pledgee institutes suit at law to recover judgment for the same debt and attaches the pledged property, he abandons his pledgee's right and is estopped from asserting any other than a lien by attachment. . . . It is stated the effect of an attachment is to put the goods in custody of the law, thus placing the property out of the control of the mortgagee. . . .

"But where the right of redemption remains in the mortgagor as a distinct right of property, subject to execution, there is no inconsistency between the lien of the chattel mortgage and the lien of an attachment or other like writ for a different debt, though asserted by the same person. . . .

"There may be little or no difference between a pledge and a chattel mortgage in actual practice, and it may be legislation treats them as similar to some extent. In a pledge, the general property remains with the pledgor; a special property passes to the pledgee. The title or general property of the pledgor will not be divested except by sale or an act equivalent thereto. To constitute a good pledge there must be possession, actual or constructive. In a mortgage such possession is not an absolute necessity and the title passes to the mortgagee: Collin's Appeal, supra, 605.

"At common law, goods in pawn could not be taken in execution in an action against the pawnor as long as the pawnee's title was unextinguished, but a sheriff may sell subject to the rights of the pawnee, although he cannot seize the goods: Srodes v. Caven, 3 Watts 258, 259. . . . Taking the pledge out of the pledgee's possession does not divest his title, and his surrender of it to the sheriff is in no sense a relinquishment of his lien; a sheriff's vendee takes subject to the lien. . . . By the act and at common law, execution is permitted against the redemption in favor of third persons; there is no reason for a different rule where the creditor in the execution is the same person as the

pledgee of the property and where he seeks to collect an indebtedness different from that by which the property is held in pledge."

From the language of the case just quoted it clearly appears that execution is permitted in favor of the creditor who is also the pledgee of the property, and it also appears that taking the pledge out of the pledgee's possession does not divest his lien, and even when he surrenders it to the sheriff he does not relinquish his lien. Other language of the same opinion indicates that the pledgee would not lose his lien if he pursued the property on a different debt from which the converse might be inferred that if he pursues the property on the same debt he surrenders his lien. We are of opinion that there is no good scientific reason for such a distinction. In the instant case, because the defendant insisted that the debt for which the property was pledged had been paid, it was necessary for the plaintiff to establish that he had not lost his lien, which he did by a verdict and judgment. He had two ways of selling the property; one by a loose method of making a sale himself, which might give occasion for some further question of his methods, and the other by the exact process of a sale under an execution by the sheriff. He chose the latter. When he exhibited the diamonds to the sheriff so that a levy could be made, did he lose his lien? After the levy was made, did he lose it merely because he allowed the sheriff to have the actual custody of the property until sold? If the sheriff had taken the property in custody against the plaintiff's consent, he would not have lost his lien: Reichenbach v. McKean, 95 Pa. 432. It was necessary to secure the judgment in order to assert his lien because the defendant insisted that the debt had been paid. Having, by securing the judgment, established the right to his lien, we think it is thoroughly illogical to hold that he could not sell the pledgee's interest in the property by the surer process of an execution and that he was relegated to the looser methods of a sale conducted by himself. He did little more than choose the sheriff as his agent to make the sale.

The only case which we have found distinctly in point is Jones v. Scott, 10 Kan. 33. In that case Scott brought a replevin to recover a lot of law books as exempt from sale upon execution. Jones was a constable and as such constable had taken the books by virtue of a writ of execution issued to him upon a judgment in favor of Andrews against Scott. Scott had deposited the books with Andrews as security for the payment of a debt and Andrews thereby obtained a lien. He also secured a judgment. The court said (page 35):

"But it may be claimed that Andrews, the creditor, lost his lien on the property by suing on the debt and by recovering a judgment thereon. We do not think he did. After personal property has been pledged, as it was in this case, as collateral security for the payment of a debt, and the debt has become due, the creditor may sue the debtor and recover a judgment against him for the amount of the debt without destroying or in the least affecting his lien on the property pledged. See authorities cited in counsel's brief and Edwards on Bailments, 271, 272, and cases there cited. It is true that the extinguishment of a debt, if really extinguished, will destroy all liens existing on property pledged for its payment. It is also true that the original debt for which this property was pledged may be said in one sense to have been extinguished by being merged in the judgment—a higher security. It is true that the original debt was so extinguished by having a judgment rendered thereon that another action could not be maintained on the original debt. But this is the only way in which it was extinguished. The debt in fact still remains, in a new form, but evidenced by a higher security, and the property pledged for its payment still remains liable therefor. The debt in fact remains until it is satisfied. In the case of

Butler *v.* Miller, 1 N. Y. 500, the court of appeals of New York (Johnson, J., delivering the opinion of the court) say: 'The rule that security of a higher nature extinguishes inferior securities will be found only to apply to the state or condition of the debt itself, and means no more than this: that when an account is settled by a note, a note changed to a bond, or a judgment taken upon either, the debt, as to its original or inferior condition, is extinguished or swallowed up in the highest security; and that all memorandums or securities by which such inferior condition was evidenced lose their vitality. It has never been applied, and I think never should be, to the extinguishment of distinct collateral securities, whether superior or inferior in degree. These are to be canceled by satisfaction of the debt or voluntary surrender alone.'

"We suppose no valid objection can be raised as to the manner of selling the property if sold on execution. It seems to be conceded that the creditor could have given notice and sold the property himself without judgment or execution. Then, if the judgment does not destroy the lien, what valid objection can there be to having an execution issued and having an officer of the law give notice and sell according to law? Must greater care be taken in the sale of this property than the law prescribes for the sale on execution of all personal property? We think not. The judgment of the court below must be reversed."

We adopt the reasoning of this case, which leads us to conclude that the appraisement for the claim of exemption must be set aside and the claim of exemption denied.

And now, June 22, 1931, so much of the rule granted on the defendant requiring her to show cause why the appraisement made at her demand should not be set aside is hereby made absolute, and so much of the rule as stayed the proceedings on the writ of execution is hereby discharged, and the sheriff is hereby directed to proceed with the execution.

From Homer L. Kreider, Harrisburg, Pa.